## JACK ROLLINS v. STATE.

No. A-6762. Opinion Filed June 8, 1929.
(277 Pac. 948.)

C. A. Summers and T. E. Futrell, for plaintiff in error.

Edwin Dabney, Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter called the defendant, was jointly informed against with Charles Reel, on a charge of possession of one quart of corn whisky with the intent then and there on the part of the said defendant and Charles Reel of selling, conveying, bartering, giving away, and otherwise furnishing the same, contrary to the form of the statutes in such cases made and provided. The jury returned a verdict of guilty against defendant Rollins, leaving the punishment to be fixed by the court, and a verdict of not guilty as to the defendant Reel. The court sentenced the defendant to imprisonment in the county jail for a period of 30 days and to pay a fine of $50 and cost. Motion for new trial was filed and overruled, and defendant has appealed to this court.

The testimony on behalf of the state, in substance, is that W. D. Shamblin stated he was deputy sheriff of Muskogee county; that Charley Barnes and J. O. Hale went with him to the home of Jack Rollins on the 27th day of November, 1926; "when we got to the house I went inside and searched the house; Mr. Hale went around the house; I went in the front door and thêre was quite a little hustling around; I hurried into the room where a half-gallon jar of whisky mash had been emptied; I saw where it had been poured on the floor; I went outside of the house

after this and saw where it was claimed the defendant had broken a vinegar jug; I tasted the substance that had been in the jug, and it tasted like a pretty sorry grade of moonshine whisky; defendant denied there was any whisky in the vinegar jug." On cross-examination witness stated that when he first saw the defendant he was close to where the officers claim the whisky jug was broken; "when I first saw the jar in the house it was setting on the table; there was about a tablespoonful of liquid in it; just enough to tell what it was; it was whisky mash; I tasted it; I can tell whisky mash; I never tried to tell the difference between whisky mash and beer mash; I don't know what home-brew is made of; they use yeast cake and sugar and I don't know what else; from the looks of the fruit jar it had been freshly emptied out; the liquid had been poured on the floor; I tasted the liquid where Jack had broken the bottle; there was just a small quantity of it in the piece of the bottle." On redirect examination the witness stated "the stuff on the floor smelled like mash; there was a wet spot on the floor; this jar was wet on the top; the woman ran out of there, and I thought she had just set it down, and I picked it up; I don't know who the woman was; I did not get down on the floor and put my nose to the wet spot; I could not distinguish where the odor was coming from; there was more liquid on the floor than there was in the jar."

Charley Barnes was called on behalf of the state, and in substance stated he had been deputy sheriff for 3 1-2 years; that the defendant Jack Rollins lived with his mother; on the 27th day of November, 1926, they went to their place to raid for whisky; they had a search warrant; Mr. Shamblin searched the house, and Mr. Hale ran around the house; Jack came out of the back door; he had a quart of whisky; he broke the jug over a rock;

it was in a quart vinegar jug; the contents of the jug was corn whisky; they did not find anything in the house. On cross-examination the witness stated the defendant Jack Rollins broke the vinegar jug on a rock about a foot square; the bottom part of the bottle dropped beside the rock; it had about a swallow of whisky in it; "I just touched my tongue to it; I guess Charley Reel lived there; he stayed there all the time; I don't know whether he was working for Mr. Long at that time or not; I picked up the bottom part of the jug that Jack broke and touched my tongue to it; it tasted like corn whisky."

J. O. Hale was called, and in substance testified to the same facts as did the witnesses Barnes and Shamblin: "I saw defendant have in his hands the vinegar jug; the defendant threw the jug down and broke it; there was a little liquid left in the bottle, and I tasted it and called it corn whisky; after the search was made I went into the house and waited for defendant Rollins to get ready; Mr. Shamblin searched the house." On cross-examination the witness stated defendant Rollins broke the bottle on a rock near the corner of the barn; "there was about a spoonful left in the bottle; I just tasted it; it was white corn I reckon; it was very poor stuff; I never did drink no whisky myself, and I don't know anything about it."

The defendant Jack Rollins demurred to the evidence on the ground that the same failed to prove him guilty of the offense charged in the information, and wholly fails in any manner to prove any intent on his part to violate the laws of the state of Oklahoma, with the whisky which it attempts to connect him with. The demurrer was overruled, and defendant excepted.

The defendant Jack Rollins in his own behalf testified that Charley Reel was his half-brother; that on the

27th day of November, 1926, defendant Reel was working for Mr. Long, a farmer, a short distance from defendant's home; the defendant Reel came to the Rollins home about 15 minutes before the officers came; that he heard the testimony of Mr. Shamblin about the beer mash or whisky mash being in a half-gallon fruit jar in the house; that the fruit jar belonged to defendant; he had made some home-brew; that he put a little sugar and meal and some yeast cake in a jar and was trying to make home-brew; he made it about a half mile from the house Monday before the officers came to the house on Saturday; he made it to drink, did not intend to sell it or give it away; "when the officers came I picked up this jug to get it out of the way; I had drained the contents of the jar out into a vinegar jug and left the dregs in the fruit jar; my half-brother had nothing to do with it whatever; I had never made any of the stuff before; it was not whisky." On cross-examination he stated he made the stuff about a half mile from the house; that he brought it to the house and put it in the bottle; his mother did not know anything about his making it; that the jar was in the room, but there was nothing but dregs in it, as he had drained it out into the vinegar jug; it was not corn whisky that was in the jug; it had a red color.

At the close of the testimony, the defendant requested the court to instruct the jury as follows:

"You are instructed that under the law and evidence in this case it is your duty to find the defendant, Jack Rollins, not guilty."

Which instruction was refused by the court.

It is urged by the defendant that there is not sufficient testimony to sustain the judgment. The defendant is charged with having possession of one quart of whisky

with the intent to sell, convey, barter, give away, or otherwise furnish the same, contrary to the form of the statutes.

The witnesses who testified for the state undertake to say that the liquid in the vinegar jug they claim defendant broke was corn whisky, yet neither of the defendants saw it before it was broken by the defendant, and defendant says it was not corn whisky. All the testimony shows that the container was a quart vinegar jug, but no one undertakes to say it was full or what quantity was in the jug. There is no evidence whatever in the record where defendant had attempted to sell or had any intention of selling any of the contents that was found in the jug. The quantity alleged to have been in the possession of the defendant, if the record clearly showed it was corn whisky, was not sufficient to make the bottle of whisky prima facie evidence of intent to sell. It is urged by the defendant that his demurrer to the state's evidence should have been sustained, for the reasons set forth in his demurrer, as the evidence on behalf of the state fails to show any intent to violate the laws of the state by selling, conveying, or furnishing any portion of the contents of the quart jug.

A careful examination of the record fails to show any testimony on behalf of the state tending to show the unlawful intent to sell, barter, give away, or otherwise furnish to others any of the contents of the quart jug they claim to have been broken by the defendant. The testimony fails to sustain the allegations in the information, and the demurrer of the defendant should have been sustained, and the jury directed to return a verdict of acquittal. Arnold v. State, 15 Okla. Cr. 229, 175 Pac. 947.

The judgment appealed from is reversed.

EDWARDS, P. J., and CHAPPELL, J., concur.